## Haines *versus* Thomson.—Thomson's Appeal.

1. Mrs. Hanson being owner of an unfinished house and lot, and her husband indebted to Thomson, she agreed to sell, and Thomson to purchase the property for $30,000 to be paid partly by the husband's debt and partly in cash; a deed was tendered to Thomson, which he declined to accept; he advanced money afterwards to finish the house; sixteen months afterwards the deed was delivered, Thomson at the same time agreeing by deed to reconvey within four years upon repayment of the amount of indebtedness and the advances, "if not previously sold;" if repayment should be made previously, Thomson to retain the premises at $2000 rent until the end of the four years. Two years after the four years the devisees of Mrs. Hanson, alleging that the transaction was a mortgage, brought a bill against Thomson for reconveyance. *Held,* that the transaction was not *per se* a mortgage.

2. If there had been nothing but the deed and agreement delivered at the same time, although of different dates it would have been a mortgage.

3. Proof of an *understanding* between the parties that the transaction was not a mortgage inadmissible.

4. When the deed and alleged defeasance are of different dates, evidence of the true nature of the transaction is admissible.

5. The agreement recited that it was "the same day and time when said indenture was delivered," although this primâ facie made a mortgage; evidence was admissible to show the reason of the discrepancy of the dates, and that the deed was executed upon a *sale* and not as *security.*

6. The burthen of proof was on the grantor to establish the transaction a mortgage.

7. Colwell *v.* Woods, 3 Watts 188; Harper's Appeal, 14 P. F. Smith 315; Kerr *v.* Gilmore, 6 Watts 405; Spering's Appeal, 10 P. F. Smith 199, commented on.

January 29th 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

[Haines *v.* Thomson.]

Appeal from the decree at Nisi Prius: No. 21, to July Term 1865.

The bill in this case was brought by Henry Haines and J. Sergeant Price, devisees under the will of Hannah A. Hanson, against John Edgar Thomson and William R. Hanson, also a devisee under the same will.

The bill averred that in 1858 Mrs. Hanson was the owner of a house and lot at the corner of Eighteenth and Spruce streets, Philadelphia, on which there was a mortgage of $7500; her husband, William R. Hanson, was largely indebted to Thomson; an arrangement was partly effected under which Thomson was to buy the house and lot for $30,000, subject to the mortgage; the consideration was to be paid partly by Hanson's indebtedness to Thomson and partly in cash. A deed to Thomson for the property, dated May 31st 1858, was executed and acknowledged, and was shortly afterwards tendered to him, but declined, he alleging the price was too high; the house being unfinished, Thomson advanced money to Mrs. Hanson to enable her to finish it; the sum so advanced was $9000, according to a statement between Thomson and Hanson made in October 1859; Thomson then agreed to advance $15,000 more, and it was agreed the whole $24,000 should be secured on Mrs. Hanson's house. Mrs. Hanson not being willing to execute a mortgage, it was agreed that a direct conveyance should be made to Thomson, and he execute a written defeasance; the deed theretofore prepared was delivered to Thomson, October 10th 1859, and at the same time an agreement was executed by Thomson, reciting the deed, that Thomson had paid $21,030.75, and was to pay $3000 more, and it was stipulated that if Hanson and wife should pay Thomson the $24,030.75 on or before the 1st of May 1863, Thomson would convey the property to Mrs. Hanson if not previously sold with a proviso that if the payment and conveyance should be made before May 1st 1863, Thomson might retain the property until that time at a rent of $2000. The agreement was dated October 10th 1859, "being the same day and time when said indenture of May 31st 1865 was delivered to the said John E. Thomson."

It was further averred that Thomson had been in possession of the property since the date of the agreement. On the 20th of May 1864, Mrs. Hanson had in writing demanded possession of the property on payment of the amount due, which she was ready to make, and asked from Thomson a statement of the account and had received no reply from him, &c.

Thomson by his answer averred that the deed of May 31st 1858 was executed by Hanson and wife, in pursuance of an agreement for an absolute sale and conveyance of the property to him, in payment of Hanson's indebtedness to him, and other money and property which he agreed to pay and transfer. He

[Haines *v*. Thomson.]

had refused the deed when tendered because he was on his way to the railroad train on a journey, and had not time to examine it. He denied that the negotiation had failed; he had performed his part of it and was entitled to the delivery of the deed which was evaded and postponed by Hanson; further conditions were sought to be added with which he finally was compelled to comply.

He admitted that the deed and agreement were delivered at the same time. He denied that there was any other plan of securing him, proposed; and averred that the conveyance was and was intended to be, a complete and absolute sale for a consideration greater than the value of the property. He denied any settlement of accounts with Hanson, or that it had been agreed to substitute a conveyance with a written defeasance for a mortgage; he averred that he had been entitled to a delivery of the deed since May 31st 1858, but had been constantly deceived by Hanson, who eventually proposed to deliver the deed, if Thomson would agree to reconvey the property at the cost at any time before May 1st 1863; he, Thomson, so agreed, if he should not have previously sold the property, and he himself, before signing the agreement, inserted in it the words "if not previously sold," intending not to limit his absolute ownership and power of disposing of the property.

The whole case was referred to a master, who reported that there had been before him no evidence in relation to the deed and agreement except the papers themselves; that they formed one transaction and together were a mortgage to Thomson to secure money loaned by him, and that the devisees of Mrs. Hanson were entitled to a reconveyance of the property upon paying the amount due to Thomson.

The agreement was as follows:—

"*Agreement* made and entered into by and between William R. Hanson of the one part, and John E. Thomson of the other part, both of Philadelphia.

"*Whereas*, William R. Hanson and Hannah A. his wife, by indenture dated the 31st day of May, A. D. 1858, granted and conveyed to the undersigned John E. Thomson, in fee, the messuage, &c., * * * subject to a mortgage of seven thousand five hundred dollars; in consideration whereof, the said John E. Thomson hath paid and given cash and other value to the amount of twenty-one thousand and thirty dollars and seventy-five cents, and hath agreed and doth agree to pay to D. S. Brown & Co., within twelve months from this date, three thousand dollars in compromise and settlement of a claim of said D. S. Brown & Co. against said William R. Hanson and his brother, the late Albert F. Hanson, provided the same can be effected.

"Now it is hereby agreed and understood by and between the said John E. Thomson and William R. Hanson, that if the said

[Haines v. Thomson.]

William R. Hanson and wife, or either of them, their or either of their heirs, executors or administrators, will pay to said John E. Thomson, his executors or administrators, the sum of twenty-four thousand and thirty dollars and seventy-five cents, on or before the 1st day of May 1863, *if not previously sold;* that then he, the said John E. Thomson, shall grant and convey said messuage and lot to said Hannah A. Hanson in fee, or to whomsoever she, in writing, may direct. *Provided, however,* that if said money be paid, and said messuage and lot be conveyed as aforesaid, before the said 1st day of May 1863, the said John E. Thomson may have and retain the use and occupancy of said messuage and lot until said 1st day of May 1863, as a tenant at or under a yearly rent of two thousand dollars, payable annually, to the said Hannah A. Hanson, her heirs or assigns, to be computed from and after the date of such reconveyance; which premises are to be given up to said Hannah Ann Hanson, her heirs or assigns, on said expiration of such tenancy as aforesaid, in like good order and condition as when received, reasonable wear and tear and casualties by fire only excepted. Witness our hands and seals this 10th day of October 1859, being the same day and time when the said indenture of May 31st 1858 was delivered to the said John E. Thomson.

J. EDGAR THOMSON, [L. S.]
WM. R. HANSON, [L. S.]"

On exceptions to the report the court at Nisi Prius (READ, J.) said:—"I have carefully considered the master's report in this case and the exceptions to it, and have duly weighed the arguments on both sides; and being of opinion that the positions of the master are correct, the exceptions are dismissed, the master's report is confirmed," &c.

Thomson appealed to the court in banc, and assigned the decree of confirmation for error.

The foregoing, with the opinion of the Supreme Court, will indicate the questions decided in this case.

*T. Cuyler,* for appellant.—The rule of law is, that two instruments of conveyance and defeasance executed and delivered at the same time, are to be considered a mortgage where such is the intention of the parties: and in ascertaining the intention, ambiguities may be removed and explained by evidence of the circumstances under which they were executed: Coote on Mortgages 11; 5 Bacon's Ab't. 5; Lane v. Shears, 1 Wend. 433. If the parties intend an absolute sale, a contemporaneous agreement for repurchase will not require a redemption: Williams v. Owen, 10 Simon 386; Goodman v. Grierson, 2 Ball & Beatty 274. If there be evidence to rebut the presumption, an agreement to reconvey will not constitute a mortgage: Coote on Mortgages 22; Sabine

*v.* Barrell, 1 Vernon 268; Perry *v.* Meddowcroft, 4 Beav. 197; Coote on Mortgages 15; 67 Law Lib. 54, and notes, especially *a*; Fisher on Mortgages 14; Davis *v.* Thomas, 1 Russ. & M. 506; Newcomb *v.* Bonham, 1 Vern. 8, 214, 232; Langton *v.* Horton, 5 Beav. 9.

*H. Longstreth, Henry Wharton* and *E. K. Price,* for appellee. —A deed with a contemporaneous agreement to reconvey on the payment of a sum of money is as much in effect a mortgage as if the defeasance had been contained in the same instrument, and parol evidence is inadmissible to show that a conditional sale was intended; Colwell *v.* Woods, 3 Watts 188; Kerr *v.* Gilmore, 6 Id. 406; Kunkle *v.* Wolfersberger, Id. 126; Hiester *v.* Madeira, 3 W. & S. 388; Brown *v.* Nickle, 6 Barr 390; Reitenbaugh *v.* Ludwick, 7 Casey 138; Wilson *v.* Shoenberger, Id. 299; Houser *v.* Lamont, 5 P. F. Smith 316; Kellum *v.* Smith, 9 Casey 158; Harper's Appeal, 14 P. F. Smith 315; Directors *v.* Royer, 7 Wright 146. The retention of securities is conclusive that the transaction was a mortgage: Robinson *v.* Cropsey, 2 Edward Ch. 138; Rhines *v.* Baird, 5 Wright 264.

The opinion of the court was delivered, February 12th 1872, by AGNEW, J.—This case is peculiar, having no exact counterpart in any found in our books. The master thought that the bill and answer neutralized each other, and being thus counterpoised, the case must be decided on the face of the deed and the so-called defeasance. Having arrived at this conclusion, he then pronounced the transaction to be a mortgage on the face of the papers, as a security for advances by Mr. Thomson to Mrs. Hanson, with a power of sale on part of the former. The master says expressly, the only evidence before him touching the deed and agreement are the papers themselves. If this were the whole case, his conclusion would be justified by Colwell *v.* Woods, 3 Watts 188; Kerr *v.* Gilmore, 6 Id. 405, and other cited cases. In Brown *v.* Nickle, 6 Barr 390, this court, commenting on Colwell *v.* Woods and Kerr *v.* Gilmore, remarked: "In the first of them it was determined that a conveyance and *simultaneous* covenant to reconvey on repayment of the *purchase*-money before a given day, must be construed to be a mortgage, though it appear by parol that the parties did not intend it to be so; and in the second, that it is not competent to the parties to prove by parol that the defeasance was a subsequent and independent agreement. These cases, said the court, are not to be resisted, yet we must suppose that there may be in *some shape* and under *some circumstances,* such a thing as a *conditional sale.* But the proof proposed in this instance was not of *distinctive acts* which constitute it, but of the *understanding* of the parties. Their understanding, how-

ever, must be gathered from the writing, and if that be ambiguous on the face of it, it cannot be gathered from the parol proof." The court also remarked that Kerr v. Gilmore "pushed the doctrine to its utmost verge." Now, if we turn to Kerr v. Gilmore, we find that the deed and defeasance were dated on the same day, and executed by the parties at the same time and before the same persons; and the offer was to prove that the deed was first executed, and then at the suggestion of one of the parties that it would be a benefit to have the privilege of repurchasing, the agreement was put in writing and executed after the deed had been executed, and the parties then spoke of it as a sale. Such is the nature of the evidence held in Kerr v. Gilmore to be incompetent, and it is clear its true character was an attempt to prove the mere understanding of the parties against the legal character of the papers as it appeared on their face. Hence it was said by Justice Huston in the opinion, " that it has become impossible to draw any conveyance, nay, to make any contract by which property shall be *redeemable* for a certain period, and cease to be so after that period has elapsed." Yet in the same opinion we find qualifications which evidence the extent of the decision. In connection with his statement that two instrumênts—a deed and a defeasance of the same date—are necessarily a mortgage, he also says that "all the cases show that *all the circumstances of the whole transaction* are inquired into in chancery and in our own courts." In another part of the opinion he qualifies what he had said in these words: " If a case can occur where such conveyance and defeasance do *not* constitute a mortgage, it must be one in which *some time has elapsed, some circumstance has occurred*, to satisfy the court and jury that the contracts were wholly separate; that the first was always intended as a *real, actual sale*, and the second bargain a real distinct agreement to purchase again property which *had once been actually sold;* but the *two bargains* cannot be made in the *same hour and day*, nor evidenced by instruments executed as these were *before the parties separated*, and before *the witnesses to the first instrument* left the room, or any new information had been communicated." That a case can arise wherein the first instrument can be shown to be a real sale, and the second, an unconnected resale, is proved by Spering's Appeal, 10 P. F. Smith 199, where the first instrument was an actual sale under a power contained in a former pledge of stock, for the very purpose of conversion to redeem the pledge, and the second was an independent agreement to resell the same kind of stock, in order to give the former owner the rise of the market for a stipulated time. Reitenbaugh v. Ludwig, 7 Casey 132, shows also that even in a common-law action evidence will be received to prove the true nature of the transaction, when the deed and alleged defeasance are dated *apart* from each other. There Wood-

[Haines *v.* Thomson.]

ward, J., submitted the question of a sale or a security to the jury, and the judgment was affirmed. Harper's Appeal, 14 P. F. Smith 315, relied on by the appellee as ruling the case before us, is another proof of the practice to hear the circumstances of the whole transaction where the deed and defeasance are not simultaneous in date. In all the cases it will be seen that the *distinctive acts*, as they are called in Brown *v.* Nickle, which characterize the transaction, have been treated as the proper subjects of evidence, and not the mere understanding of the parties, or their belief as to the legal effect of their acts; and in all, the sum of the matter has been to determine by the true nature of the transaction, whether the conveyance was an actual sale, or a mode of securing money lent, or a debt. The only exception is, where the instruments are of even date on their face, and where, being in terms a conveyance and a contract to reconvey on payment of the money passing between them, they are in legal contemplation a mortgage. In that case, being a mortgage on their face, parol evidence will not be received to convert them into a conditional sale.

With these principles in mind, let us examine the facts before us. In doing this it will be found that the error of the master was in treating the bill and answer as completely neutralizing each other, and (disregarding all other evidence) in deciding upon the deed and agreement as instruments of even date and creation (witnessing one and the same transaction on the same day) and thus falling within the principle of Colwell *v.* Woods, Kerr *v.* Gilmore, and some other cases. But the first paragraph of the plaintiff's bill sets forth a strong, and in some respects, controlling fact admitted by the answer to be true; that there was an agreement for the sale of the property to the defendant, upon which the very deed in question was executed and dated May 31st 1858, and shortly afterward tendered to the defendant. The only difference between the bill and answer upon this point is, that the former alleges that Mr. Thomson refused to accept it, because the price of the property was too high, while the latter asserts that the tender was made to him when going to the cars on a journey westward, followed by a protracted absence; and that the refusal was only because the time and place afforded no fitting opportunity for its examination. That the deed was originally made and tendered on the footing of an actual sale, is undeniable. Now when we refer to the two instruments themselves, we find them dated widely apart—the deed on the 31st of May 1858, and the agreement on the 10th of October 1859. On the face of the deed there is nothing in date, recital or other circumstance to connect it with a transaction a year and five months later, and it is only in the agreement of October 10th 1859, at the foot we find a recital that the deed of May 1858 was delivered on the same day with the agree-

ment.  In the absence of controlling facts, this recital would establish their operation as a mortgage.  The recital of simultaneous delivery is, however, an admission of. that fact only, and does not account for the widely discrepant dates and executions of the papers.  This necessarily brings in the evidence to account for a fact on the face of the instruments themselves totally at variance with the idea of their execution as contemporaneous parts of one transaction.  This evidence is furnished by the admissions of the parties themselves, corroborated by the date of the deed, that it was executed upon a sale, and not as security for money, and that this is the same deed which was finally delivered.  Now, if a deed of long antecedent date, founded upon an acknowledged sale, is to be made to play a new part at a much later day, and to take upon itself the form of a defeasible conveyance as a security for money lent or advanced, assuredly the burthen of proof falls upon the party averring the change in its character. On this question the bill and answer stand in direct contradiction to each other all the way through, the bill averring that the sale became a mortgage, and the answer expressly denying every fact and allegation set forth in the bill, to this effect.  No attempt has been made to disprove the answer in these material and positive denials, either by two witnesses or by one witness and circumstances equivalent to the testimony of a second, but the case is rested by the plaintiff wholly on the agreement itself of October 10th 1859. Yet this paper is not in form a defeasance, but an agreement to sell, and on its face bears evidence tending to deprive it of the character of a defeasance.  In the first place, the consideration expressed in it is not the same as that set forth in the deed, but a greater one—that in the deed being $22,500, and that in the agreement, $24,030.75.  This is not a strong circumstance, but it shows discrepancy, rendering it somewhat probable that the resale was for a greater sum than the sale.  There is another fact of more weight.  The agreement binds Mr. Thompson to convey to Mrs. Hanson only if the premises be not *previously sold.* Thompson, it seems, interlined the words "if not previously sold," as he says, to protect himself in his purchase.  The interlineation is conceded to be his.  The plaintiff contends that this expresses only a power, and that the instrument was a defeasance with a power of sale to the mortgagee.  But this begs the question.  If we *assume* that the deed is a mortgage, the words in the defeasance, of course, import only a power of sale.  But on the primary question whether it was a *sale* or a mortgage, the words interlined in connection with the date of the deed, and the actual prior sale, strongly indicate a sale and an intention to prevent a question as to Thomson's right to sell whenever and to whom he pleased.  It, therefore, discloses Thomson's intent to take the deed as it was originally intended, as a purchase; and to preserve his own control

[Haines *v.* Thomson.]

over the property. Having reached the point that these instruments, together with the admitted facts, tend to repel the allegation that the deed admittedly made upon a sale, was afterwards changed into a mortgage; we are now at liberty to consider certain other facts and circumstances corroborating the answer of Mr. Thomson, and strengthening the denial of the change into a mortgage. Hanson, the husband, is admitted to have been largely indebted to Mr. Thomson, and unable to pay his debts. In this situation the bill admits that his wife came forward to aid him by the sale of the house and lot in question. The property was not worth more than the price stipulated in the deed, to wit—$22,500— subject to a mortgage of $7500, making $30,000. The evidence of value taken would make it less valuable; but leaving that out of sight, and taking the purchase itself as Mr. Thomson's admission of value at that time, and the assertion of the bill that he afterwards declined to take the property as being too high, it is very evident the price fixed in the deed was the full value of the property. In connection with this fact, which in itself repels the idea of a mere security for money, is the entire absence of any evidence of an obligation to pay the debt. No covenant was taken in the agreement; no bond or any other security for the repayment of the money. And to these circumstances we must add the money advanced by Thomson to improve the property, which would be unsecured by the property if it was returned to Mrs. Hanson as a mere mortgage. But if it were a sale, Thomson, having reserved his right to sell, could sell, repay his outlay, and render to Mrs. Hanson the sum stated in the agreement. All these *indicative facts* seem to be utterly irreconcilable with the fact of a mortgage, especially when we consider one of the grantors in the deed was a married woman, and the other an insolvent man. Upon the whole case we are forced to the conclusion that the deed was not a mortgage, and the subsequent agreement was a new resale brought about by the delays and difficulties arising between the parties, and forced upon Mr. Thomson in order to close the sale, and also out of regard to the relation of Mrs. Hanson as a wife, and the owner of the property, coming to her husband's assistance, to enable her to regain it if she could pay for it.

The decree of the Court of Nisi Prius is therefore reversed, and it is now adjudged and decreed that the said deed of May 31st 1858 is a grant of the premises by way of a sale, and not a mortgage; and it is further decreed that the bill of the plaintiff be dismissed, with costs to be paid by the appellee.